Reginald S. Oliver, J.
This neglect proceeding is brought by the husband against his estranged wife. He alleges that her conduct is such that the two children of the marriage, la daughter aged nine and a son aged six, should not be permitted to continue to reside with her. The facts are, for all practical purposes, undisputed.
The petitioner and respondent were married in 1960, and have two children as noted above. After some marital discord, they separated on or about March 30, 1971, and the wife rented an apartment a few miles from the marital residence and took the children and family car.
*901 For some time the wife, aged 29, has by her own testimony been enamored of a 22-year-old male. Both teach or are employed in the same school system. In the early part of March, the two children were taken by their mother to a dancing class in the afternoon. Eventually they were picked up by their father the next day, having spent the night with the dancing instructor. Because of a particularly heavy storm on that date, the court feels that the better part of valor was to leave the children in good hands until the roads were cleared. However, the respondent admitted that she was with her boyfriend during all that time.
Since the parties separated, respondent admitted spending one entire night in her friend’s trailer, accompanied by the children. She denied any wrong. Also, on at least two occasions admitted by respondent, the friend has stayed the night in her apartment, the children being present, the friend sleeping on the couch and she with the children in the bedroom.
On two occasions during the hearing the respondent declined to answer questions with regard to her relationship with her friend under the Fifth Amendment to the Constitution, on the ground that the answers might tend to incriminate her. She readily admitted kissing and embracing her friend in front of the children on numerous occasions, and at times had been clothed in a nightgown and housecoat with her friend in the presence of the children. It appears that he rather regularly eats dinner and breakfast at her apartment, and drives her and the children to school and returns them at night, using an automobile owned jointly by the petitioner and the respondent.
The court also finds that conversation between respondent and her friend concerning her pending divorce, and their marriage thereafter, has taken place in such a fashion that the children cannot help but be aware of what is transpiring. The respondent admitted that the children were upset and could not understand the situation. It would appear the cause is the fact of the removal of the children from their home and their father by the respondent. The choice was hers.
In brief, the question to be determined is whether the conduct of the respondent and the environment of the children is such that they can be deemed to be neglected, and their custody taken from the mother.
Of primary concern to the court is the welfare of these two infants. Both are at the age when they should be learning rules of conduct with regard to what is generally considered to be morally right, and not what is generally considered to be morally wrong.
*902 On the other side of the coin, it is a general rule that small children should be with their mother, to receive her tender love and guidance. While there is little doubt of this mother’s love, the court is of the opinion she is showing it in a strange way, and further that her moral guidance is completely lacking. She has not stopped to consider that if her new friend, seven years her junior, has no compunction about breaking up a marriage, he may very likely do the same to her. There is no certainty that he will marry the respondent. Even if her marriage had already disintegrated, the children should not be subjected to the atmosphere in which they are now living.
Under article 10 of the Family Court Act, effective May 1, 1970 a neglected child is defined as (§ 1012, subd. [f]):
“ (f) ‘ Neglected child ’ means a child less than eighteen years of age (i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care
(A) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care, though financially able to do so or offered financial or other reasonable means to do so; or
(B) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, including the infliction of excessive corporal punishment; or by using a drug or drugs; or by using alcoholic beverages to the extent that he loses self-control of his actions, or by any other acts of a similarly serious nature requiring the aid of the court ’ ’.
Prior to May 1, 1970, under former article 3 of the Family Court Act, a neglected child was defined as (§ 312):
“ A ‘ neglected child ’ means a male less than sixteen years of age or a female less than eighteen years of age * * *
(b) who suffers or is likely to suffer serious harm from the improper guardianship, including lack of moral supervision or guidance, of his parents or other person legally responsible for his care and requires the aid of the court ’ ’.
It is to be noted that the definition of ‘ ‘ neglected child ’ ’ used in article 10 is somewhat different from that used in former article 3. The court cannot believe, however, that the Legislature in any way intended to limit or decrease the court’s authority in dealing with minor children. The Legislature certainly must be as concerned with the moral environment of infants as much as are the Family Courts, and must have intended the general rules heretofore established by the courts to continue, in order to pro *903 tect the youth of this State. The court is of the opinion that the words ‘ ‘ unreasonably inflicting or allowing to be inflicted harm 5 5 (§ 1012, subd. [f], par. [i], cl. [B]) encompass the words “ lack of moral supervision ” used in subdivision (b) of former section 312 of the Family Court Act, and the court so holds.
Matter of Anonymous (37 Misc 2d 411) is a case in point. The father alleged that immoral and improper conduct on the part of the mother constituted neglect. It appears that the mother was entertaining male companions in her apartment in the presence of her children. She and her husband were living separate and apart. The male companions spent parts of days and nights in her apartment, and ate meals there with her and the children. The court held the petitioner had proven by a fair preponderance of the evidence that the children were neglected by reason of her activities. The lack of a fit moral atmosphere was the basis of the holding.
This court so holds in the instant case. The respondent’s refusal to answer questions on the grounds of self incrimination does not prevent the court from drawing the usual inferences. (Bradley v. O’Hare, 2 A D 2d 436.)
It cannot be that the best interests of these impressionable children will best be served by continuing their custody in one who proclaims and lives by extraordinary ideas of right conduct. (Bunim v. Bunim, 298 N. Y. 391, 394.)
The court finds that the respondent was present in court at the hearing and was served with a copy of the petition. (Family Ct. Act, § 1041.)
Proof has been submitted that the petitioning father is responsible and able to care for the children, loves the children, and has made preparations for their supervision and care while he is at work.
The petition alleging neglect is supported by a fair preponderance of the evidence. Custody of both children is awarded to the petitioner. Visitation rights of the mother may be agreed upon between the attorneys for the parties, on the condition that the mother shall not have visitation at any time when she is in the company of or entertaining male companions, to whom she is not married.