■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM "BBB" * on Behalf of JEFFREY ALLEN "BBB"*, an Infant, Respondent, v. KATHRYN "CCC" *, Appellant.—Appeals from a judgment of the Family Court of Delaware County, entered November 30, 1972, which awarded custody of the infant Jeffrey Allen "BBB" to petitioner and from an order, entered April 3, 1973, denying the motion of appellant to set aside the initial judgment or direct a new trial. These appeals concern a custody judgment granted upon a writ of habeas corpus following referral of same from Supreme Court to the Family Court. There was no previous order of custody as to the minor child of the marriage of the parties, although the Mexican divorce decree procured by petitioner in 1969 awarded custody to appellant. Jeffrey was born February 17, 1967; his parents separated in September or October, 1968 and were divorced in February, 1969, following which petitioner remarried in March, 1969. Petitioner and his present wife have no children and now live in Riverdale, New York, where petitioner works in a self-employed capacity and at the same time holds a part-time job as an assistant manager in a restaurant, while his present wife is employed as a secretary. Appellant, with whom Jeffrey resides, had two more children following the divorce and was pregnant at the time of the Family Court hearing. She alleges that the first of these subsequent children was fathered by petitioner, which petitioner denies. In any event, appellant remarried in August, 1972, following the birth of the second child. At the time of trial, she resided with the infant herein, her two other children, her mother and her husband, who was employed as a bartender. The record reveals that in 1969 petitioner ceased paying support and refused to return the child after a visitation period. He and his second wife then moved from their former residence in Manhattan to Riverdale, taking Jeffrey with them. Three months later appellant seized the child and caused the petitioner to be arrested and charged with interference with custody, to which he pleaded guilty. Petitioner subsequently commenced the instant proceeding on August 15, 1972 by writ of habeas corpus. We are, of course, solely concerned with the welfare of Jeffrey. (Domestic Relations Law, § 70; *Matter of Bachman* v. *Mejias,* 1 N Y 2d 575, 581.) The Family Court approached this case with the view that neither parent has a prima facie right to custody (Domestic Relations Law, §§ 70, 240). However, this standard, while appropriate in a situation where both parents have shared custody, has not been applied in cases where the parents have been separated or divorced for some length of time and the child has been largely in the custody of only one of them. Jeffrey has resided with his mother since birth and " a change of custody under such circumstances should only be directed where the custodial parent has been 'shown to be unfit, or perhaps less fit, to continue to serve as the proper custodian'. (*Matter of Lang* v. *Lang,* 9 A D 2d 401, 409, affd. 7 N Y 2d 1029; *Matter of Metz* v. *Morley,* 29 A D 2d 462, 464–465.) Custody should be established on a long term basis whenever possible (*Matter of Wout* v. *Wout,* 32 A D 2d 709, 710; *Matter of Lang* v. *Lang, supra,* p. 409) and changes in established custody made only on the demonstration of a sufficient change in circumstances to show

' * Fictitious names.

a real need to effect a change to insure the welfare of the child" (*Matter of Rodolfo "CC"* v. *Susan "CC"*, 37 A D 2d 657). There are several factors which mandate reversal here. The Mexican divorce decree placed the custody of the infant in the appellant and he has remained with his mother from his birth with the exception of the three-month period when he was with his father in Riverdale. The Family Court found that so far as the physical care of the child is concerned, the mother did care for the child adequately. Jeffrey's teacher at the Hancock Headstart School testified he was well-clothed, very neat and clean at all times, and well-behaved. She further testified that appellant's residence was "spotlessly" clean, with adequate room for the children. We further observe that the Family Court stated that from a thorough investigation of both of the homes which was conducted by the Department of Social Services at the request of the court, it found nothing unfavorable to either parent. A support order was obtained in 1969 directing the petitioner to pay to the appellant the sum of $25 per week for support of the child. We are disturbed that these payments were stopped almost completely in November of 1970 and from that date up until the present proceeding, petitioner sent approximately $200 to the appellant for the support of the child, when in fact over $2,000 should have been paid. A change in Jeffrey's custody now, absent a clear showing of unfitness of his mother, is hardly in keeping with the aim of creating a stable environment for the child and avoiding unnecessary shifts in custody. In addition, the Family Court's finding that appellant had a second child under circumstances clearly showing the child to be illegitimate was incorrect on the record presented and thus prejudicial to her. Since we find that the evidence in the record fails to show that appellant is not a proper custodian, and is therefore insufficient to establish any reason for removing Jeffrey from her custody, the orders appealed from should be reversed. Judgment and order reversed, on the law and the facts, and petition denied, with costs. Herlihy, P. J., Greenblott, Cooke, Kane and Main, JJ., concur.