Louis B. Heller, J.
There are three motions before the court: (a) to punish defendant for contempt for refusal of plaintiff’s visitation; (b) to reargue a motion for increased child support; (c) change of custody from defendant to plaintiff, or for joint custody. The court will consider the motions in the order of their facility.
Plaintiff’s motion to punish for contempt is denied as defendant’s alleged refusal to permit plaintiff to enjoy his visitation rights with their son for one weekend out of a period of almost three years does not constitute sufficient grounds for the granting of the drastic remedy of contempt. In any event, *829 there does appear to have been a misunderstanding as to plaintiffs right of visitation on the specific weekend.
Plaintiffs motion to reargue an increase in support for his son was made on the basis of an oral decision rendered on the argument of defendant’s motion. The increase in weekly support was from $25 to $50. Though an order was thereafter entered, this court may nevertheless consider plaintiffs motion. Reargument to correct a determination may be made either prior to or after entry of an order, but prior to the expiration of the time for appeal. The court may correct its decision even in the absence of a motion to reargue (Home Fed. Sav. v Four Star Hgts., 70 Misc 2d 118).
The order as entered makes no reference to plaintiffs payment of one half of the monthly expenses for the infant’s education, drugs, dental, medical, and transportation to school, which total $120 monthly. The judgment of divorce, entered January 23, 1974, contains several inadvertent errors that have not been discovered by either party. The judgment directs "that defendant [mother] shall pay to plaintiff [father] * * * for support and maintenance of the minor child * * * the sum of twenty five ($25.00) dollars per week * * * commencing the week after October 27, 1971 as per separation agreement entered * * * October 27, 1971, which sum shall be inclusive of all obligations of defendant [but meaning plaintiff] * * * except that the defendant shall share equally with plaintiff in the cost of medical or dental expenses incurred for the benefit of the child” (emphasis supplied). Disregarding the errors, which shall be corrected in the order to be entered hereon, plaintiff, by contributing one half of the monthly expenses for education ($166) and transportation to school ($33), is exceeding his obligation as set forth in the judgment of divorce. The confusion engendered by the judgment and order of modification as entered by this court on January 6, 1975 requires correction.
Re-examining all of the facts, judgment and order, this court grants plaintiffs motion for reargument, and on reargument directs that the third decretal provision of the judgment of divorce dated January 23, 1974 be modified as follows: the references to defendant’s obligation to make support payments shall, instead, read "plaintiffs obligation,” so that he and not she shall contribute to and share the cost of the infant’s support and education; the reference to payment of $25 weekly shall, instead, read $35 weekly; and in addition *830 thereto, plaintiff shall pay to defendant one half of the monthly expenses for the infant’s education, drugs, dental, medical, and transportation to school. The court notes that plaintiff has been making $100 monthly payments to fulfill his $25 weekly support obligation, thereby omitting four weekly payments over the year. This practice shall cease as there are four and one-third weeks in a month and not four.
The motion for change of custody presents a most difficult problem encompassing emotional, psychological, religious, and societal considerations that must be determined in the atmosphere of our current day thinking and mores.
Unfortunately, the acrimony displayed by the parties, their heated and inflexible positions, and one parent’s portrayal of his son as one in need of institutional care, though an innocent and lovable child, prompts this court to ask, "Are parents truly good for their children?”
The parents are highly educated; each is in the teaching profession pursuing higher levels of attainment. The father is a professor in two religious universities and a teacher in a parochial high school. The parties were married on August 12, 1967 and their son was born January 14, 1969. As a result of unhappy, irreconcilable differences, they separated, and by separation agreement dated October 27, 1971, as thereafter amended, custody of their son was given to defendant with liberal rights of visitation being accorded to plaintiff. The mother’s custody has been undisturbed since the child’s birth, except when she was away on a European study experience for several months, during which time the child was with his paternal aunt and uncle. The parties were divorced on the basis of living separate and apart beyond the minimum statutory period pursuant to a formal separation agreement filed with this court.
This past decade has seen many young couples cast aside traditional concepts and embark upon a lifestyle of their own, one of greater sexual freedom, a gratification of their own desires for a "complete life,” without considering the effect on their children or giving serious thought as to whether such new mode of living may not cause emotional devastation to themselves and their children. Not envisaged are such problems as: (1) whether the private values that the young are looking for can give them stability and add meaning to their lives; or (2) whether their new mode of life may prove detrimental to the health and welfare of their infant children as *831 they mature; or (3) whether after maturity, the personality of their children may have been so marred as to create a rejection of parents. These are indeed searing questions that cannot be lightly brushed aside and the answers must be provided by the contesting parents.
The mother here readily admits that she is living with a man as husband and wife without the benefit of clergy, and that although such relationship existed for approximately SVi years, she may decide one day to marry him. Her position is that marriage exists when a man and woman and bound together by love and not by ceremony, law, or marriage band. Her rationalization and philosophy is that the mutual pledge to accept responsibility for each other, fortified by a feeling of total commitment that extends into the future, constitutes a marriage. It may very well be that her relationship militates against her being designated for the "Mother of the Year” award. As Judge Cardozo remarked in one of his extrajudicial statements in a discussion of the moral level that the law should strive to maintain, "The law will not hold the crowd to the morality of saints and seers.” (see Cardozo, Selected Writings, foreward, p X).
The crux of plaintiff’s application is that continued residence of the child in the prevailing "adulterous” atmosphere has caused the child to become "seriously disturbed,” "functioning in a very marginal, very tenuous basis,” "a borderline psychosis,” manifested by such symptoms as "blocking * * * backtracking, a lot of hesitation, distress, tics, grimaces,” and in need of intensive therapy (testimony of plaintiff’s psychiatrist). In addition, plaintiff alleges that the child is being estranged and has been told to regard plaintiff as his biologic father.
However, according to defendant’s lay and expert witnesses, the child has thrived under her care and guidance, is doing very well at school academically and socially, has fully adjusted to his surroundings, and shows none of the symptoms allegedly found by plaintiff’s psychiatrist. The picture of the child portrayed to the court had no gray areas. It was either black or white. Consequently, the court, with the consent of the parties, held an in camera hearing with the child.
The court finds that the child is intelligent', keenly observant, aware of the purpose of his "interview” with the court, and yet fully at ease and relaxed. He evinced none of the tensions, involuntary muscular spasms or movements of the *832 body, arms or face, nor any abnormal demeanor as described by plaintiff’s psychiatrist. His speech was clear, answers unhesitant and distinctly responsive, with spontaneity of expression. The court was gravely concerned with its responsibility in passing judgment on the need, if any, for immediate medical treatment and "whether he [the child] should be medicated on the spot in order to help him.” The overall conduct of the child throughout the in camera hearing presented no such emergency and, on the contrary, the child did appear to be happy with his dual status of having a "stepfather” who cares, plays with him, takes him once a week to the YMCA and is involved in his day-to-day activities, and a father with whom he may visit regularly.
Both parents unquestionably love their son and he in turn responds to their love and wishes to continue to cleave to them in the status and pattern to which he is now accustomed. There are disturbing sidelights, but it is not the status or philosophical concepts, or spiritual or religious views and backgrounds of the parents that are in issue in this custody proceeding. The court is not here concerned with the individual rights of each parent as between themselves or as between themselves and the child. Questions of custody deal only with the rights of the child and his welfare (Finlay v Finlay, 240 NY 429).
The fundamental issue here presented is whether a mother, separated and thereafter divorced from her husband, becomes unfit to have custody of her child when she adopts a lifestyle that seeks not the sanction of matrimony.
The court is fully cognizant of the authorities that frown upon a mother’s extramarital relationships or living meretriciously with a "boyfriend,” but in each of those cases the parties were not formally separated or divorced (see Bunim v Bunim, 298 NY 391; Matter of "T” v "U”, 36 AD2d 665; Johnson v Johnson, 47 Misc 2d 805, affd 25 AD2d 672; Matter of ”H” Children, 65 Misc 2d 187; Matter of Tesch, 66 Misc 2d 900). The standards as applied by the courts differ where there is a formal separation or divorce (People ex rel. William "BBB” v Kathryn “CCC”, 44 AD2d 617). Residence together of an unmarried male and female without the benefit of a sermonized marriage is not per se evil nor one of immorality. Nor is it one commended by this court. In former years this State recognized common-law marriages. The statutory abolition of such relationships was not a declaration of abhorrence *833 but one of denial of benefits, rights, and remedies provided by statute to the parties. The criterion to be applied to determinations of custody is not whether the court condones the mother’s mode of living or considers it to be contrary to good morals, but whether the child is best located with the mother and there well behaved and cared for (see concurring opn of Christ, J., in Matter of Feldman v Feldman, 45 AD2d 320).
The court must here note that about a year prior to this application, the plaintiff, defendant, and the "stepfather” had a conference to adjust and harmonize their differing concepts on the continued rearing of the infant and the child’s attitude and behavior with respect to all of them. They then appeared to have agreed on a course of conduct which each has followed. It is a bit late to disturb old wounds. The parties, for the sake of their infant son whom they love, should bank their fires of hostility, their headlong pursuit to win and to attain victory whose end result may be the crushing of a budding flower of a child.
No doubt the child has anxieties. They are a normal manifestation engendered by a feeling of being buffeted about between psychiatrists, psychologists, lawyers, and judges in a bitter feud between parents. Apparently it matters little that he prefers to be outside the pale of their strife. Bitterness between parents creates and exacerbates tensions and anxieties and must be productive of harm to the very one they profess to love, but unfortunately will not make the necessary sacrifice for peace and harmony. Serenity is the grist of a child’s well being, growth and development. The parties here should and must submerge their persistence for vindication to a persistence for co-operation and joint effort to adapt to the existent conditions that have been self-produced.
Plaintiff’s petition and supporting testimony do not establish a lack of care or concern by the mother and the "stepfather” for the child; nor that she is unfit to have custody; nor that her lifestyle is, in fact, inimical to the interests of the child. "Amorality, immorality, sexual deviation and what we conveniently consider aberrant sexual practices do not ipso facto constitute unfitness for custody” (Matter of Feldman v Feldman, supra, p 322). This court finds none of the foregoing graphic behavioral patterns of conduct present nor one that involves "gross moral turpitude as would render [defendant] unfit for custody” (Matter of Rodolfo "CC” v Susan "CC”, 37 AD2d 657). Resort to negative factors barring continuance of *834 custody are put aside as abrasive influences that may corrode rather than heal, harmonize, and synthesize differences. Resolution of the issue of custody should preferably be placed upon more conducive considerations determinative of the best welfare of the child over the longer range. Change of a child’s residence and surroundings without the circumstances of dire necessity and imminence of peril should be avoided. "The rearing of a child requires greater stability” (Dintruff v McGreevy, 34 NY2d 887, 888). Without compelling circumstances, retention of status quo should be preferred to a "shuttling back and forth” (Schuler v Schuler, 29 AD2d 669).
The facts and testimony as presented do not depict defendant as an unfit mother nor one superficially or secondarily interested in the child and his welfare. The failure of such proof bars change of custody (see People ex rel. Bruen v Bruen, 38 AD2d 725; Nierenberg v Nierenberg, 43 AD2d 717; Aberbach v Aberbach, 33 NY2d 592).
The court is beholden to the parties and their counsel for their sincere, conscientious, and fair presentation of their proof and for their commendable, co-operative spirit in aiding the court to resolve the dispute.
Accordingly, plaintiff’s motions to punish defendant for contempt and for a change of custody are denied. His motion to reargue the increased award for the child’s support is granted as herein indicated.
Defendant’s counsel are awarded the sum of $1,500 for their services rendered together with the sum of $500 for the expenses incurred for the psychiatrist arid psychologist, payable as follows: $750 within 30 days of the entry and service of a copy of the order to be entered herein; $500 within 60 days thereof; $375 within 90 days thereof; and the balance of $375 within 120 days thereof.
Settle order.